WALWORTH MANUF'G CO. (GILBERT, ETC., MANUF'G CO. v.). See Case No. 5,418.

## Case No. 17,137.

WALZ et al. v. BROOKVILLE NAT. BANK.

[11 Chi. Leg. News, 392; 8 Reporter, 580.] [1]

Circuit Court, D. Indiana. Aug., 1879.

PRACTICE — DECREE AT SAME TERM OF DEFAULT ENTERED.

It is not competent for the court to enter a final decree in case of default and decree pro confesso during the term when the default was taken; but it seems that where the default or decree pro confesso is taken in open court, under any special order made by the court and after the intervention of a rule day, an absolute decree may be taken at the same term of court.

In equity.

DRUMMOND, Circuit Judge. This is a bill of review filed by Mary M. Walz, the widow of Frank A. Walz, deceased, and his children and heirs at law, under the following facts: Frank A. Walz, in his lifetime, in January, 1874, borrowed a considerable sum of money of the defendant, for which he gave his promissory notes, with a mortgage executed by himself and his wife, Mary M. Walz, now his widow and administratrix, on certain property to secure the said indebtedness. Some of the notes not being paid according to their tenor and effect, the defendant filed a bill to foreclose the mortgage in this court in July, 1875. A subpoena was issued on the 12th of that month, and was then served upon all persons named as defendants in the bill, except Mary M. Walz, a minor, who seems to have been a different person from the wife of the mortgagor. A guardian ad litem was appointed for those of the defendants who were minors, and the guardian filed an answer for them denying the allegations in the bill.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[1] [8 Reporter, 580, contains only a partial report.]

It is not clearly stated in the bill of review, but the inference is that Mary M. Walz, the present widow and administratrix of the estate of Frank A. Walz, was served with process in the foreclosure proceeding, and the fact, is that she did not appear in the case, and a default was taken against her, and a decree that the bill as to her be taken pro confesso. The bill of foreclosure was then referred to a master, who made a report of the facts, and also of the amount due upon the notes and mortgage, and the report was approved by the court, and on the 24th day of September, 1875, there was a decree of the court finding the amount due under the mortgage, and requiring that Mary M. Walz should, within ten days, pay the sum with interest, and that in default thereof, the property should be sold. It would seem that Frank A. Walz had died before the bill in the foreclosure case was filed. It is alleged now in the bill of review that the decree entered in the foreclosure proceeding was erroneous, and should be set aside because there was a default taken, and an order entered, as of course in the order book of this court, that the foreclosure bill should be taken pro confesso against Mary M. Walz, the administratrix and widow, who had a claim in her own right to the property mortgaged; and that at the same term that the decree pro confesso was entered, there was a final decree rendered and an order of sale made contrary, as alleged, to the 18th and 19th rules of the practice of courts of equity. The bill of review also claims that the mortgage was invalid, in whole or in part, because it was not given to the bank in good faith, by way of security for a debt or debts which had been previously contracted, and that it was not real estate conveyed for what was necessary for the accommodation of the bank in the way of transacting its business. It is also alleged in the bill of review that the mortgage was given in whole or in part for an usurious consideration; and further, that a sale was decreed to be made of the property in fee simple; whereas in point of fact, it was not owned by the mortgagor in fee simple, but that there were other interests in the property. And it is further alleged that counsel were employed in the case, and that they neglected their duty, and did not appear, and that was the reason a default was taken against the parties.

The main controversy in the case seems to be whether it was competent for the court to render a final decree, and order a sale in the foreclosure case, where default had been taken against one of the defendants at the same term in which the decree was rendered; and it is claimed that the case of O'Hara v. MacConnell, 93 U. S. 150, is an authority to show that could not be done, and so that there is error upon the face of the decree of foreclosure, for which a bill of review will lie. The case referred to seems by the language of the judge who delivered the opinion to hold that it was not competent for the court to en-

ter a final decree in case of default during the term when the default was taken. It is true that it was not absolutely necessary to so hold in that case, although it is given as one of the reasons why the case was reversed, the remaining two reasons stated by the court being sufficient for that purpose. The principle, as stated by the reporter in the headnote is, that it is not competent to render a final decree for want of appearance at the first term after service of subpoena, unless another rule-day has intervened, which seems to be somewhat different from that stated by the judge who delivered the opinion of the court. In this case two rule-days had intervened before final decree, after the subpoena was served, and one after default was taken.

The practice has been in this circuit for many years to take final decrees at the same term as that during which a default has been entered against the party. We have always supposed that the cases in which a final decree could not be taken during the term in which the default was entered, applied to the entry of defaults in what is called the "order-book," during vacation. The 4th rule in equity declares that "all motions, rules, orders, and other proceedings made and directed at chambers, or on rule-days at the clerk's office —whether special or of course—shall be entered by the clerk in an order-book, to be kept at the clerk's office, on the day when they are made and directed." It has been always supposed that this is something different from the regular record or journal of the proceedings kept by the court in term time. It says that this order-book "shall be open at all office hours to the free inspection of the parties in any suit in equity, and their solicitors," a direction that would hardly seem to have been necessary when applied to the regular record or journal kept of proceedings in court while sitting. So when the 18th rule declares that it was the duty of the defendant to file his plea, demurrer or answer to the bill, in the clerk's office, on the rule-day next succeeding that of entering his appearance, and that "in default thereof the plaintiff may, at his election, enter an order as of course, in the order-book, that the bill be taken pro confesso," it has been supposed that this referred to an order under the rules, and under the direction of the plaintiff, entered in the order-book, during vacation or at chambers, and not to an order entered by the court when it was in regular session. And so the practice has been where there was a default taken in open court during its session, and entered by the court, to consider that it was not an order made by the plaintiff in the order-book, as mentioned in the 18th rule; and so in the 19th rule, when it was declared that the court may proceed at the next ensuing term after the bill is taken pro confesso to render an absolute decree, it has been supposed that it referred to the order taken in vacation, and entered in the order-book, as stated in the 18th rule; and it will be recollected that these rules were made in 1842.

at a time when in most of the districts the court sat for a few days, or at most a few weeks during a term, and they hardly seem applicable to courts which, when the decree in question was entered, sat for months, and when, if the 18th rule applied to all decrees pro confesso, it might well be that a final decree could be taken in an equity case upon answer and proof sooner than where there had been a decree pro confesso. But the supreme court seems to have given emphasis to the opinion in the case of O'Hara by amending the 18th and 19th rules at its last term, by which amendment it was declared that after the expiration of 30 days from the time when the order pro confesso was entered, a final decree might be taken. If it appeared in this case upon the bill of review that the default or decree pro confesso, had been taken in open court under any special order made by the court, and after the intervention of a rule-day an absolute decree had been taken, I should feel inclined to sustain the decree in this case, but it would seem from the allegation of the bill, as though the decree pro confesso, or the default, was not taken during the sitting of the court. The allegation of the bill of review is, that said bill was filed and default taken, and the order entered as of course in the order-book, that the bill should be taken pro confesso, which rather seems to imply that a decree pro confesso was entered in vacation under the 18th rule.

In view of the difficulty connected with this question, and of the decision of the supreme court of the United States in the O'Hara Case, and of the amendments made to the 18th and 19th rules at the last term of the court, I feel constrained to overrule the demurrer which has been filed to the bill in this case. If it shall turn out that the decree pro confesso was entered during the sitting of the court, under an order to that effect made by the court in session, it can be stated in the answer, and then the question can be fairly presented to the court for its consideration, whether there could be an absolute and final decree taken at the same term during which a decree pro confesso or default was entered.